Good morning. May it please the Court, Lori Schoenberg from Reeves & Associates, on behalf of the petitioner-appellant in this case, Genan Nagash IASU, I'd like to reserve two minutes for rebuttal. Under Rivera v. Ashcroft, the Fifth Amendment grants a person with a tolerable claim to U.S. citizenship a right to a judicial determination of that claim in habeas corpus proceedings. This is true even if that person waived their right to appeal a removal order, failed to exhaust that U.S. citizenship claim in administrative proceedings, and accepted deportation from this country. The REAL ID Act did not eliminate that Fifth Amendment right and did not eliminate all judicial forms for the exercise of that right. What case authority supports your argument that the REAL ID Act did not eliminate the right to have this removal challenge once the time period has expired? What case authority are you relying upon? Well, Your Honor, in Ramadan v. Gonzales, this Court held that Congress never intended to eliminate all judicial review of removal proceedings, but instead streamline judicial review by giving every alien quote-unquote one day in the courts of appeals. And he had his day. I'm sorry? He had his day in court, right? He had his day in the immigration court, but he executed a defective waiver of appeal because the immigration judges in San Francisco and in San Diego never informed him that he had a Fifth Amendment right to a judicial determination of his non-frivolous claim of U.S. citizenship, and never informed him that by waiving his appellate rights, he would be relinquishing his claim to U.S. citizenship because that determination would become final. That is what the Court held in Rivera, and the Rivera Court held that that, in and of itself, made the appellate waiver in that case defective. In addition to that, in the immigration court proceedings, Mr. Iasso repeatedly tried to raise his claim of citizenship, first at the first master calendar hearing when he was asked for his response to the allegations in the notice to appear for removal proceedings that he was not a U.S. citizen. He actually denied that and said that he was... He said in his heart he was... Didn't he say in his heart he thought he was a citizen? Actually, in the first hearing, he just denied the allegation that he was not a U.S. citizen, and he tried to explain the process through which he attempted to gain citizenship. The immigration judge in that case said, determined erroneously, that he had been convicted before he became a citizen, and therefore he was, in fact, subject to removal. At the fourth removal hearing, he was asked by the immigration judge again why he had denied the allegation that he was not a U.S. citizen, and in response to that question, he did say that he believed that he was a U.S. citizen in his heart. Could he have raised this issue had he gone to the BIA from the immigration court? He could have raised this issue, but the BIA doesn't have the authority to rule on constitutional issues, so I don't know that they would have... Well, I mean the issue of his citizenship. He could have raised his claim to citizenship in the BIA had he not defectively waived his right to appeal his removal order. Unfortunately, because of that appellate waiver, he was deprived... So you want us to send this case back to the district court and tell the district court, you do have jurisdiction to hear his claim to citizenship. Is that what you're asking us to do? Yes, Your Honor, because there was no other avenue for judicial review. He does not have the opportunity to file a petition for review in this case because he executed a defective waiver of his right to appeal. Also, of course, there is a 30-day jurisdictional deadline for filing petitions for review. That deadline expired approximately on August 14, 2004. You know, this is an interesting case because after looking at the record, I don't think your client has any claim, much less a colorable one, to citizenship. I disagree with that, Your Honor. He applied for naturalization in April of 2002. He, in fact, went before an immigration officer in April of 2002, executed the... But what happened at the end of the line? What's the final step? The final step is that he swore an oath of allegiance. And he never did that because he was committing a crime? That's not correct, Your Honor. In fact, in his declaration, he actually said that he had signed and swore an oath of allegiance before an immigration officer... It has to be public, under the law. It was before an immigration officer, which is what the Immigration Act of 1995... There are immigration ceremonies every day of the week in courtrooms all across the country for this very purpose, to have the public oath given, administered, and for the alien to publicly acknowledge his intent to relinquish any other citizenship and to become an American citizen. That's a very important part of the process, and it was not done in this case. I respectfully disagree, Your Honor. He did that before an immigration officer. There was no indication that that was a private ceremony. It wasn't a ceremony at all. It was processing. There's no definition in 1448A of what is a public ceremony. He, in fact, signed and swore an oath of allegiance, and he alleges in his declaration the immigration officer said, Congratulations, you're done, and you'll receive a certificate in a few months. That seems to indicate that he, in fact, signed and swore that oath of allegiance, and that is exactly what the Immigration Act of 1990 contemplated. So your argument is that the public ceremony that takes place in a courtroom is not necessary for the citizenship process. Is that your argument? A public ceremony in a courtroom is not sufficient for the attainment of citizenship. It's not necessary. It's not necessary for the attainment. Now, what case authority are you relying upon for that argument? Well, Gorbach v. Reno specifically went through the Immigration Act of 1990 and said that Congress, in that act, removed the authority to administer oaths of allegiance, oaths of citizenship from district courts to immigration officers, and, in fact, federal law 8 U.S.C. 1443D... That's not the point. The point is, must it be done in a court ceremony? It does not say that it must be done in a court ceremony. Are you quoting some public statute that we're not aware of? Because Section 1448A specifically sets forth public ceremony. It says public ceremony. It does not say public ceremony in a court, and the Immigration Act of 1990... In order to take a public ceremony before the attorney general or a court with jurisdiction, etc. But the act as a whole says that an immigration officer is allowed to administer the oath of allegiance. The court can exercise exclusive jurisdiction over administering those oaths of allegiance. And he did that in a public ceremony? There's no evidence that it was a private ceremony, and I think this also... Is there evidence it was a ceremony? Well, Your Honor, he alleges that he signed and swore an oath before an immigration officer. There's no evidence that this is private, and this goes to... There's more to a ceremony. A ceremony has... That term is used advisedly. Ceremony has, you know, a connotation that's different than just appearing at someone's desk. Your Honor, I do want to point out that, I mean, even if there is a factual dispute as to whether he was in a public or private ceremony, this points to the reason that he should have a judicial... There's no evidence of a ceremony at all. There's no evidence of a ceremony at all. Has your client filed any action under 8 U.S.C. 1503A for declaratory judgment with respect to his citizenship? He has not, and he cannot, because the issue of his citizenship was placed into question during his removal proceedings. 1503A specifically prohibits him from actually raising his claim of citizenship in that form because of that. Then the government says he could do this, so the government is wrong. Yes, Your Honor. What about a motion to reopen? A motion to reopen is a form of discretionary relief. Rivera says that a person has a Fifth Amendment right to a judicial determination of an option to claim to citizenship in federal proceedings. A discretionary right to relief is not the relief that is available as a right, and in any event, a motion to reopen would be completely unavailable for him for several reasons. First of all, motions to reopen are only available for somebody to allege new facts that were not available during the prior removal proceeding. His citizenship claim was a set of facts that was available to him during his removal proceeding. In fact, he intended to and did, in fact, raise his claim of citizenship before the immigration judges. Moreover, there is a 90-day jurisdictional deadline for the filing of a motion to reopen, which he did not meet. He doesn't meet any of the limited exceptions for filing a motion to reopen outside that deadline. He was not represented by counsel, so there's no ineffective assistance of counsel claim. He has not alleged, and there's no evidence of changes in country conditions in his country of removal, Eritrea. And he was not the subject of an in absentia order of removal. Even if the government wanted to join in a motion to reopen, the government can choose to but is not required to do so, and that is not enough to satisfy the Fifth Amendment right to a judicial determination of his claim. Could he turn up unannounced and join a crowd every day and take the oath? I would argue yes, Your Honor, because his application for naturalization was approved and he did, in fact, sign and swear an oath of allegiance before an immigration officer. Now, you say that his waiver of the right to appeal was deficient because he wasn't advised of his right to appeal? Well, he was advised of his right to appeal, but he was not advised of his Fifth Amendment right to a judicial determination of a non-frivolous claim of citizenship, and that by waiving his appeal he would actually be relinquishing his citizenship claim because, in fact, the immigration judge's determination at that point would become final. Also, the waiver of appeal in this case has to be viewed in the context of the entire hearing on July 14, 2004. What happened at that hearing is that the immigration judge again denied that he had a citizenship claim, went through evidence of his removability for having committed an aggravated felony, based upon his review that evidence determined that the other relief that Mr. Iyasu had applied for, which was an application for asylum withholding of removal and relief under the U.N. Convention Against Torture, was not available for him except for CAT, and that even if Mr. Iyasu wanted to pursue CAT relief, he had to know that that would not give him a grant of lawful status in the United States, that that could be taken away from him at any time, and he could remain in custody indefinitely if he wanted to pursue that relief. Based upon that representation, Mr. Iyasu waived his right to seek that relief, and it appears from the record that he waived his right in part because he thought that it would take too much time. Here's where I don't follow you. He's in front of the judge, and the issue of citizenship comes up, and they go through this at rank length. You've probably read it more times than I have, and he says at one time, well, but I never got my citizenship. So, well, you said something about citizenship. What do you mean? And then he stumbles all over this Ethiopia and Eritrea business, and he points out that he never quite got there, so then you get into the removal thing, and then the judge says you can appeal my decision to the Board of Immigration Appeals, which is like a higher court, do you understand, sir? So why doesn't that give him the opportunity to pursue his citizenship claim in some respect to the BIA? Well, because the judge did not advise him that that appeal could include a right to a judicial determination of a non-frivolous claim of citizenship. This discussion of the appellate waiver followed his denial of belief under withholding of removal or cat or asylum. So Mr. Riaso could have reasonably understood that waiver to encompass only the waiver of the right to appeal asylum withholding of removal. And then if he had gone to the BIA, then he could have come for his judicial determination on a petition review to the Ninth Circuit. He didn't understand that, Your Honor. The court didn't make that clear. All right, counsel. You've done an excellent job with a tough case. Thank you, Your Honor. Absolutely. You've exceeded your time, but we will give you one minute for rebuttal. Thank you, Your Honor. You're welcome. May it please the Court, my name is Jennifer Pazner on behalf of the respondent, the United States Attorney General. There are a couple of issues in this case. Let me start with the issue that this Court started with, whether he even has – well, let me start by saying that he's waived, failed to exhaust every issue in this case except arguably his claim that he's a United States citizen. All of these claims about what happened before the immigration judge, there is no exception to the requirement that you appeal those claims to the Board, and he didn't. So the only issue in this case is this Court statement in Rivera that you can't fail to exhaust a colorable claim to citizenship. So let me start with the colorable aspect. Every single – two courts of appeals have now considered this exact issue. The Fifth Circuit in Okafor and the Eleventh Circuit in Tovar, Alvarez. And I don't believe we cited these in our briefs, so I can give you the citations. No, you need to fill out a paper with the clerk to write those down. Okay. Have you advised the other side that you're going to be relying on cases that haven't been cited? No. In our brief, we assumed that he had a colorable claim to citizenship and argued the jurisdiction. Time out. Time out. Now you're bringing cases to us that we never heard of from you before, right? I understand, but – And did you tell the defense attorney before you stood up at the podium you're going to be relying on cases that she never heard of either? No, because I didn't expect the Court to engage in a discussion about whether the claim was colorable or not. We assumed – Well, why did you have the cases, then, if you didn't expect us to engage in that? Well, because I looked at the issues in this case. A determination was made in our brief to assume that the claim was colorable because – if the Court would let me briefly explain – because the Fifth Circuit and the Eleventh Circuit – The point is, if you're going to rely on cases, it's good practice to let the other side know before you stand up and do that. I understand, but I did not expect to address this argument. In our brief – What about the cases? If you didn't expect to address it, you wouldn't have had the cases. Well, I researched the issue when preparing the brief, and I was aware of this case law, but a determination was made to only address the jurisdictional aspect. Well, you came in this morning. You knew you were going to address those cases. No, I didn't. But the Court asked – the Court suggested that it was not a colorable claim to citizenship. I was not planning on addressing that issue, but the Court engaged in a discussion about whether or not it was a colorable claim to citizenship. In my preparation of this argument, I know that it's not a colorable claim to citizenship. A determination was made not to make that argument in our brief. I was not going to address it this morning, but the Court asked, opposing counsel. So you're responding to that? So I'm responding to that. Go ahead. In the Fifth Circuit in Okafor v. Gonzalez, 456 F. 3rd, 531. In the Eleventh Circuit in Tovar Alvarez, 427. You're speaking faster than anybody can possibly write. I'm sorry. 456 F. 3rd, what? 531, and that was July 18, 2006. And the Eleventh Circuit in Tovar Alvarez v. U.S. Attorney General, and that is 427 F. 3rd, 1350, 2005. Okay. When you're done, counsel, we have a sheet that you need to fill out with the – I will do that, and I apologize. I'm only bringing this up in response to you. I understand. Those courts both considered the exact situation in this case. An oath was signed during the same process where the application was approved. Neither alien then attended the public oath ceremony. I think in both cases similarly to this one because the aliens were arrested and were incarcerated. And both courts held that the public oath ceremony in 1448A is a requirement to attain citizenship and that signing the oath before an immigration officer when the application is approved is not sufficient. Relying upon the plain language of 1448A. And so those two cases are the ones – the two circuits that have directly considered this claim. So now I'll address the issue of jurisdiction, which is what we addressed in our brief. Assuming for the sake of argument that he has a non-frivolous claim to U.S. citizenship, in Rivera this court said that he has to have a forum to raise that claim. We'll assume that that's correct. The Real ID Act clearly precludes the district court in Habeas from hearing his claim to citizenship. The Real ID Act is clear about that. So this claim cannot be heard. Rivera was decided before the Real ID Act. It found an exception to the exclusive jurisdiction in the courts of appeals under 1252b-5 in limited circumstances and found that Rivera could raise his claim in district court in Habeas. Now under the Real ID Act, that is no longer jurisdictionally possible. We have offered two other alternative avenues that Mr. Iassu can pursue to obtain a judicial determination on his claim of U.S. citizenship. Either by obtaining a, I now have forgotten the exact word that 1503 uses. A declaratory judgment of citizenship. A declaratory judgment of citizenship under 1503a. Or by filing a motion to reopen for the immigration judge. You heard the other side say neither is available. We disagree. We think a motion to reopen is certainly available. And a fair reading of 1503 suggests that he can also pursue that avenue. So let me start with the 1503. His claim to citizenship arose before he was placed in removal proceedings, according to him, when he signed this oath before the immigration officer. He was then placed in removal proceedings. Our reading of the transcript suggests that he never really raised his claim to citizenship before the immigration judge. Saying that you think you're a citizen in your heart does not constitute a claim that you think you're a citizen. But regardless, he is no longer in removal proceedings. His removal proceedings were completed a couple of years ago. But doesn't the statute say if it were raised during removal proceedings, then you can't take advantage of 1503? Well, what we think he has to do under 1503 is obtain an independent determination that he is not a citizen, and then he can bring that under 1503, independent of whatever claim he might or might not have raised during his removal proceedings, because his claim to citizenship arose before his removal proceedings, and he is no longer in removal proceedings. Now, is there any case that says that? No, there's not, but there's no case that doesn't say that. So it's a crapshoot. Well, he could at least try. An issue here is apparently the REAL ID Act and its preclusion of judicial review in the district court in Havis. Under Rivera, there must be a defined mechanism for determining whether or not there's citizenship, not just a possibility to try to convince an authority or a tribunal that you should be able to raise this issue. And that's why the motion to reopen is problematic, because it's just a shot, not necessarily a guaranteed form, which is what Rivera contemplates. Well, I would say that before he has an attempt at either route, before saying that neither one is a guaranteed form, I would suggest that both should be attempted before saying that under the REAL ID Act, the district court somehow has jurisdiction, where the REAL ID Act clearly contemplates that it doesn't have jurisdiction. Does the government concede that if 1503 is tried and the motion to reopen is tried and neither one of those gives a forum for resolution of this issue, that the government would concede that the district court has jurisdiction? No, under no circumstances will the government concede that the district court has jurisdiction under a Havis petition. Let me briefly explain the motion to reopen argument. He can certainly go file a motion to reopen before the immigration judge. There's case law from this court in the ineffective assistance of counsel arena that equitable tolling sometimes applies. He has a number of things he could argue to explain that the normal bars to filing a motion to reopen his case should not apply. The immigration judge can do whatever he or she wants with that motion to reopen. He can then appeal, assuming the immigration judge denies it, he can appeal it to the board. The board, again, can consider equitable tolling an argument that whatever argument he wants to make about why his special motion to reopen should be considered in spite of the limitations. That's only considering the motion, not the merits. You don't get to the merits of the case, the citizenship claim, under that scenario. You do, because our position is that he can then file a timely petition for review from the denial of the motion to reopen before the board. And 1252b-5 gives this court de novo first-time authority to consider a citizenship claim as long as it's brought in a timely petition for review. That's not true, because if we're looking at a motion to reopen, we look at whether or not the BIA abused its discretion in denying the motion to reopen. We don't necessarily get to the merits of why the motion to reopen was filed. Generally, that's true. We believe that 1252b-5 says something specific about citizenship claims. And what it says is, basically, whenever an alien raises a citizenship claim in the context of a timely petition for review, the court shall decide the citizenship claim. So are you going to support him in all these requests to reopen and have this heard? Well, I don't know if DHS will join in a motion to reopen. My point is that even if the motion— But the issue here is whether he has a forum to raise his claim. And my point is, even if the department chooses to oppose the motion to reopen before the immigration judge and the board, the problem here is that he doesn't have a timely petition for review before this court. If the immigration judge and the board choose to deny the motion to reopen, he has an opportunity to file a timely petition for review from that denial.  1252b-5 gives this court authority to consider DeNovo his citizenship claim. Are you conceding there was something defective about the waiver of the right to pursue this to the BIA in the first place? No, we're not. And I started off by saying we believe all of those claims have been waived. Rivera only has to do with the actual non-frivolous claim to citizenship, all the procedural arguments about what happened before the board. And none of those options have to be waived if we view this claim as non-colorable. Is that your argument? Yes. Again, we did not go that far in our brief, but our position on the merits is that it's clear under the statute that there has to be a public ceremony. There is no dispute that there was no public ceremony. No, opposing counsel does not concede that issue. She says that there's nothing that says that was not public, that that was, yeah. So she doesn't concede it. I'm just saying you said there's no dispute, but there is a dispute, at least in opposing counsel's view. Our view is that 1448A is clear that there has to be. It sets out the procedure, and it's a public ceremony in a court, and that clearly did not happen in this case. That would be your argument on the motion to reopen, not here. Is that what you're saying? She could argue that on the motion to reopen, but not here, now. Well, she's making the argument here, too, that it's not colorable, aren't you? That the claim of citizenship is not colorable. Are you making that argument or not? Well, we did not make it in our brief. We didn't go that far because two courts decided the issue after having briefing on the issue, and we felt it would be going a little far to say it's non-colorable where this court has not actually decided that issue. But this court asked about whether or not it was colorable, so. So what's your answer to the question? To which question? Whether it's colorable. No, it's not colorable. 28J letters are useful. I mean, okay. If you're suggesting that I prepare a 28J letter after the argument, raising that argument. I'm not suggesting that. Okay. Well, but I do suggest that you give us the authority that you relied upon in your argument here. I will do that. I will fill out a form. Rebuttal. One minute, please. Thank you, Your Honor. As the government attorney indicated, they assumed that Mr. Riasu had a colorable claim to citizenship. Because they assumed that his claim was colorable, any argument right now that his claim to citizenship is not colorable is therefore waived. Of course, I'm not in a position to refute the government's assertions regarding Okafor and Tovar Alvarez, although I will respond to a 28J letter in that effect. But even assuming that those cases do hold, as the government says, that signing an oath is not sufficient to make that person a citizen, Mr. Riasu did more than signing an oath. He swore an oath before an immigration officer. So I would argue that even if the facts are as the government says they were in those cases, and again, I will respond to a 28J letter on that issue, those cases I don't believe are binding. Counsel, as to the waiver issue, if we ask a question that's a question of law, I don't think that that can be considered a waiver if we've asked the question in the context of trying to resolve the case. Well, the government could have raised the argument that this was not a colorable claim of citizenship. They did not do so. And there is case law to the effect that if they did not raise it in the brief, they have waived that argument on appeal. But, you know, she also indicated that those two cases were decided after briefing in this case. It doesn't appear to be the case she mentioned. Those cases were decided in 2006. Briefing in this case was completed in February of 2007. So she certainly could have brought up those cases before. I did want to address briefly the argument that a motion to reopen is available, and I would respectfully submit to this Court that a motion to reopen is available in form but not in substance. The only circumstance in which this Court has recognized equitable tooling of that 90-day deadline for a motion to reopen is with respect to claims of ineffective assistance of counsel. And obviously that claim is not available here because Mr. Iyasu proceeded pro se. And as this Court has pointed out, of course, even if he appealed a denial of a motion to reopen up to this Court, you would probably just be reviewing whether the facts were enough to warrant reopening of the case, not whether he would be entitled to prevail on the merits. Just to go back very, very briefly to the definition of colorable, the Rivera Court actually provides a definition of colorable as plausible or not frivolous, and indeed in claims regarding defective waivers of appellate rights and defects in removal proceedings. The Ninth Circuit has said that plausible claims for relief need not to be arguments that this person can prevail on the merits. Even if this Court thinks that Mr. Iyasu, just based on the record here, cannot prevail on the merits, this only points out the need for an evidentiary hearing on his claim to citizenship. The fact that he does have an approved N-400 in his A-file, which was included in the District Court's record, and the fact that there is a sign and sworn oath of allegiance is enough evidence that at least his claim of citizenship is not patently frivolous, and he should be entitled to a judicial determination of that claim. What crime did he commit that interrupted his path towards citizenship? He was convicted of assault with a deadly weapon, Your Honor. Thank you. All right, thank you to both counsel. The case just argued is submitted for decision by the Court. We will confer as a panel and let you know if we want additional briefing.
judges: Trott, Rawlinson, King